## MINNEAPOLIS NAT. BANK v. FIDELITY & CASUALTY CO. OF NEW YORK.

(District Court, D. Minnesota, Fourth Division.    September 25, 1923.)

**Insurance ⊚508½—Surety bond held to cover only excess of loss over amount of primary bond.**

> A surety bond issued to a bank by a rider provided that insurer should be liable only in case of loss exceeding the amount of a primary bond for $25,000, then held by the bank, and that "for the purpose of this excess bond the insured should be considered to be carrying such primary bond, whether actually carried or not, and, if carried, whether valid and enforceable or not." *Held*, that insurer was liable only for losses coming within the terms of the bond in excess of $25,000 and that losses incurred before it took effect, whether discovered or not prior to that date, could not be charged against the primary bond to exhaust it, and make insurer primarily liable for subsequent losses.

At Law.   Action by the Minneapolis National Bank against the Fidelity & Casualty Company of New York.   On demurrer to complaint. Demurrer sustained.

Nathan H. Chase and James E. O'Brien, both of Minneapolis, Minn., for plaintiff.

Briggs, Weyl & Briggs, of St. Paul, Minn., for defendant.

McGEE, District Judge.   This, an action at law, was commenced by the plaintiff against the defendant on the 14th day of March, 1923, in the district court of Anoka county, Minn., and removed to this court on the petition of the defendant on the ground of diverse citizenship of the parties.

The plaintiff seeks to recover from the defendant the sum of $16,-870.92 on a surety bond issued by the defendant to the plaintiff on the 24th day of October, 1922, and effective from noon on that day, for an alleged breach of that bond resulting in damages to the plaintiff in the amount stated.   The case is before the court at this time on a demurrer interposed by the defendant to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

Briefly stated, the complaint alleges that on the 26th day of March, 1921, the Iowa Bonding & Casualty Company, an Iowa corporation, executed and delivered to the plaintiff its policy contract of insurance, designated as "Bankers' Blanket Bond, Form No. 2," No. 10715, a copy of which is attached to the complaint; that this bond has been in force since the date of its issue, and constitutes the "primary bond" mentioned in the defendant's policy contract; that to the extent of

$25,000, the maximum amount specified therein, said bond covered the thefts of plaintiff's employees, William J. Smith and A. E. Klein, the thefts of Smith aggregating $87,127.87 and those of Klein $14,000, as well as an item of $778.67 disbursed by the plaintiff in making recovery of parts of the stolen property.

The complaint also alleges that on the 24th of October, 1922, effective from noon on that day, in consideration of a reduced premium, the defendant executed and delivered to the plaintiff its policy contract of insurance, designated as "Bankers' Blanket Bond, Form 2," No. 931,-860, which, aside from the indorsement attached thereto, is couched in the same language as the bond above described, and as an excess bond protects the plaintiff to an amount not exceeding $75,000, a copy of which bond is attached to the complaint; that this bond has been continuously in force from the day and hour of its issue. Attached to the defendant's bond, as a rider, is an indorsement which will be referred to hereinafter, the correct interpretation of which determines the question presented by the demurrer.

The complaint further alleges: That between some time in the fall of 1920 (the exact date being unknown to plaintiff) and the 9th day of November, 1922, inclusive, the plaintiff sustained a direct loss in moneys and securities (as the same are defined in said contract of the defendant and that of the Iowa Bonding & Casualty Company) through and by the dishonest acts of one William J. Smith, an officer of said bank, aggregating $87,127.87. The thefts occurred as follows: $28,-000 prior to noon on March 26, 1921; $27,434.62 subsequent to noon March 26, 1921, and prior to noon October 24, 1922; and $31,693.25 subsequent to noon on October 24, 1922 and prior to the 10th day of November, 1922. That plaintiff recovered of the identical moneys and securities so stolen from it by the said Smith, subsequent to noon on October 24, 1922, and prior to November 10, 1922, $17,101, and also received from said Smith and his wife money and property belonging to them of the estimated value of $35,342.51, to be applied at the request of said Smith to the earliest of said thefts by said Smith, and that the same were so applied by the plaintiff. That by reason of the said dishonest and felonious acts of said Smith the plaintiff has been damaged and has suffered a net pecuniary loss in the amount of $34,-684.36, of which amount $20,092.11 was stolen as aforesaid prior to noon October 24, 1922, and $14,592.25 was stolen subsequent to noon October 24, 1922 and prior to November 10, 1922.

For a second cause of action the complaint alleges that A. E. Klein, a note teller employed in the bank of the plaintiff, stole from said bank between the 3d day of June, 1922, and the 9th day of November, 1922, money belonging to the plaintiff, or for which it was then legally liable, of the value of $14,000, of which amount $12,500 was stolen between the 3d day of June, 1922, and the 23d day of October, 1922, and the remaining $1,500 subsequent to noon October 24, 1922, and prior to November 9, 1922; that plaintiff, subsequent to the discovery of the dishonest acts of said Klein, received from him, the said Klein, money belonging to said Klein to the amount of $600, and from persons other than the said Klein the sum of $3,050, to be applied by plaintiff to

the thefts of said Klein as plaintiff might elect, and that plaintiff then and there did elect to apply said sums to the earliest of said thefts of said Klein; that the actual costs and expenses paid out by plaintiff in making recovery of the property as hereinbefore set forth amounts to $778.67; that by reason of the said dishonest and felonious acts of said Klein plaintiff has been damaged and has suffered a net pecuniary loss in the sum of $10,350; that, by reason of the said dishonest and felonious acts of the said Smith and the said Klein, plaintiff has been damaged and has suffered a total net pecuniary loss in the sum of $45,034.36, of which $28,942.11 was stolen as aforesaid by the said Smith and the said Klein between noon on March 26, 1921, and noon on October 24, 1922, and $16,092.25 was stolen as aforesaid by the said Smith and the said Klein subsequent to noon on October 24, 1922, and prior to November 10, 1922; that under the terms and conditions of its said policy contract defendant is indebted to plaintiff in said last-named sum, plus the item of $778.67.

The plaintiff demands judgment for $16,870.92, with interest at the rate of 6 per cent. from and after February 15, 1923. The complaint contains all appropriate allegations in regard to notice to the insurer in each policy mentioned herein necessary to fix liability, if liability exists, leaving the sole question to be determined whether defendant's policy covers the net loss sustained by the bank subsequent to noon October 24, 1922, by reason of the facts set forth in the complaint.

The defendant's contention, briefly stated, is that its liability is to be determined as it would have been determined if the two policies described in the complaint had been executed at noon October 24, 1922. The plaintiff's contention is thus stated in a brief submitted by its counsel:

"As we read the indorsement under consideration, it is apparent that, whatever may have been defendant's intention in framing it, the language used might fairly indicate to plaintiff that it was entitled to recover under defendant's bond for any 'excess' of loss (sustained after October 24th) over and above $25,000 of loss then discovered, irrespective of whether the primary bond of $25,000 was exhausted by losses occurring prior to or subsequent to October 24th."

The case turns upon the proper construction of the language of the indorsement, which is as follows:

"October 24, 1922.

"This indorsement forms a part of Bankers' Blanket Bond No. 931860, issued to Minneapolis National Bank, Minneapolis, Minn. In consideration of the reduced premium charged for the attached bond, it is agreed, by the acceptance thereof as follows:

"(1) That the underwriter shall be liable thereunder only in case the insured shall sustain a loss or losses exceeding in the aggregate the amount which would be recoverable under a primary bond, upon the same form as the attached bond (including all riders attached thereto), in the amount of twenty-five thousand dollars ($25,000), and maintained in that amount during the time the attached bond shall remain in force, and the underwriter shall be liable only for such excess, not exceeding, however, the amount of the attached bond. And for the purpose of this excess bond the insured shall be considered to be carrying such primary bond whether actually carried or not, and, if carried, whether valid and enforceable or not.

293 F.—4

"(2) That the recovery clause, being condition 7 (section 12 of Form 2), shall be and the same is hereby amended by inserting in said clause immediately before the word 'loss' wherever it appears therein, the word 'excess.'

"(3) That the insured shall, in the time and in the manner prescribed in condition 4 (section 16 of Form 2) of the attached bond, give the underwriter notice of any loss coming within the terms of the attached bond, whether the underwriter be liable therefor or not, and upon request of the underwriter shall file with it a brief statement giving the particulars concerning such loss.

"(4) That the attached bond shall be subject to all its terms, conditions, and limitations, except as herein expressly modified.

"[Signed] Geo. W. Allen, Asst. Secy.

"The foregoing amendments are hereby accepted and agreed to.

"Minneapolis National Bank, Minneapolis, Minn.

"[Signed] By G. H. Berg, Ass't Cashier."

The net loss sustained by the plaintiff subsequent to noon, October 24, 1922, was $16,870.92. It seems to be very clear, from the language of section 1 of the indorsement or rider attached to the defendant's policy, that the construction contended for by the defendant's counsel is correct—that the bond, being an excess bond, rested at all times upon an underlying primary bond, on which there was and is at all times subsequent to noon on October 24, 1922, considered to be recoverable $25,000; otherwise, much of the language of section 1 of the rider is without meaning. If the indorsement or rider were construed to authorize a reduction of liability on the primary bond to the extent of the losses sustained by the insured prior to noon on October 24, 1922, whether discovered before or after that date, no force or meaning whatever would be attributed to the provisions of the rider or indorsement which require a primary bond of $25,000 to be maintained in that amount during the time the excess bond shall remain in force, and provide that the defendant shall be liable only for losses in excess of that amount. The suggested construction would render nugatory the concluding lines of section 1 of the indorsement:

"And for the purpose of this excess bond, the insured shall be considered to be carrying such primary bond, whether actually carried or not and, if carried, whether valid and enforceable or not."

This concluding sentence of section 1 apparently was added to put beyond the possibility of misunderstanding the meaning of the general language of the indorsement, and in the face of that language it is idle to discuss an interpretation that would make it possible to charge against the primary bond losses sustained prior to October 24, 1922, whether discovered or not prior to that date, sufficient in amount to exhaust the bond, and so that from October 24th onward there would be no underlying bond. Such a construction would convert the excess bond, based upon a reduced premium, into a primary bond, and would produce a result never contemplated by the contracting parties.

My conclusion is that the complaint fails to state facts sufficient to constitute a cause of action against the defendant, in this: That it fails to show losses in excess of $25,000 sustained by the plaintiff subsequent to noon of the 24th day of October, 1922. It follows that the demurrer is well taken, and should be sustained.

It is so ordered.