**NATIONAL SURETY CO. et al. v. FIRST NAT. BANK IN ARDMORE et al.**

No. 24721.   Oct. 6, 1936.

Rehearing Denied Nov. 10, 1936.

N. A. Gibson, John F. Butler, and Dolman, Dyer & Dolman, for plaintiffs in error.

Potterf, Gray & Poindexter, for defendants in error.

RILEY, J. This is an action by the First National Bank in Ardmore to recover upon two blanket fidelity bonds covering the employees of the plaintiff. The bond executed by the National Surety Company was dated December 17, 1928, and was in force until December 17, 1930. The one executed by the Employers' Liability Assurance Company was in effect from December 19, 1930, to June 20, 1931.

During all that time and for several years prior thereto, Russell G. Thomas was employed by the bank as teller. He was discharged June 20, 1931, because of shortage found in his accounts. Each of the bonds sued upon was in the principal sum of $50,000, but the liability thereunder was limited by the terms of riders attached thereto, the material part of which reads:

"In consideration of the reduced premium charged for the attached bond, it is understood and agreed as follows:

"1. The Underwriter shall not be liable under the attached bond on account of any loss or series of losses caused by the acts or omissions of any employee or other person or combination of employees or other persons, or caused by the same casualty or event, unless the amount of such loss or series of losses, after deducting all recoveries on account thereof made prior to the payment of such loss or losses by the Underwriter, shall be in excess of Twenty-Five Thousand ($25,000.00), and then for such excess only but in no event for more than the amount of the attached bond."

The total of shortage in Thomas' accounts amounted to $44,650. Repayment by him reduced the amount to $42,650.

From the pleadings it appears that the bank had a bond of the United States Fidelity & Guaranty Company which was in effect from and after December 19, 1926, and which also covered liability of a bond prior in date to it, but there was no rider limiting the liability. The bond is referred to as a primary bond.

The abstractions of Thomas continued over a period of years. Up to December 19, 1926, the shortage amounted to $9,497.79. From that date to December 19,

1928, the date of the bond of the National Surety Company, additional abstractions were made from time to time amounting to about $13,500. From December 19, 1928, to December 17, 1930, an additional amount of approximately $13.085 was taken; and from December 19, 1930, to June 20, 1931, there were additional abstractions amounting to approximately $6,319.17.

This is in substance the finding of the trial court, and there is no contention that the findings as to these facts are not substantially correct. The United States Fidelity & Guaranty Company admitted its liability under its bond and paid the principal sum thereof. It thus appears that approximately $22,000 of the total shortage was taken by Thomas before the date of the bond of the National Surety Company, and about $36,000 was taken before the date of the bond of the Employers' Liability Assurance Company, but less than $25,000 was taken after the date of either of the bonds sued upon.

The amount collected from Thomas, allowing him credit for a balance of earned salary, amounted to $2,382.83.

Plaintiff prayed for judgment against the National Surety Company in the sum of $11,084.39, and against the Employers' Liability Assurance Company in the sum of $17,619.17.

The trial court, after making findings of fact substantially as above stated, and of which there is no complaint, stated his conclusions of law, which, after referring to the contentions made, and comparing the provision of the riders with the one involved in the case of Minneapolis Nat. Bk. v. Fidelity & Cas. Co., 293 Fed. 47, concluded:

"First, That the bonds sued upon, without the riders, would make the defendant companies liable for any such loss occurring within the terms of their bonds, from $1 to $50,000.

"Second, That the limitation or exemption fixed by the rider specifying that the company shall not be liable for any series of losses occasioned by the acts of any employee unless the total amount of such losses shall exceed $25,000, and then only for the excess, contains no words that would limit or require that this series of losses shall all occur during the term of the attached bond, that though the law might allow me to imply such a limitation for the protection of the assured, it does not allow me to imply such a limitation for the protection of the insurance company. The bond or rather the rider is ambiguous in this particular. It does not put any limit on the period within which such a series of losses must occur. Under such circumstances, all the law requires that I construe the ambiguity in favor of the assured. As above stated, other bonds or riders have expressly put a limit on the time when such a series of losses must occur. If the defendants in this case wanted such a limit they shall have (should have) put it in. The court is not permitted to put it in for them. Neither is the court permitted to construe the doubt or ambiguity in favor of the insurance or bonding companies.

"Third, That each bonding company is therefore liable for the amount of the loss occurring within the term of its bond to the extent that the total of the series of losses accrued at the time of expiration of its bond exceeded the sum of $25,000; that under the above the defendant Natl. Surety Company is liable for $11,083.23, and the defendant Employers' Liability Assurance Corporation is liable for $6,319.17."

Judgment was entered accordingly, and both defendant surety companies appeal by separate petitions in error.

The principal question involves the construction to be placed upon the limiting provision of the rider, taken in connection with the provisions of the bonds to which they were attached. Both parties agree that each bond and the rider attached thereto are to be construed together as one contract.

Defendant in error contends that the riders were prepared by the respective sureties and that the language used is their own and therefore any ambiguity appearing therein should be construed in favor of the bank.

The question turns upon the meaning of the words:

"The underwriter shall not be liable under the attached bond on account of any one loss or series of losses * * * unless the amount of such loss or series of losses, * * * shall be in excess of twenty-five thousand dollars, and then for such excess only, but in no event for more than the amount of the attached bond."

The bonds sued upon without the riders would make the defendant companies liable for any loss occurring within the terms of their respective bonds, from $1 to $50,000. That the liability would have been limited to losses occurring within the terms of the respective bonds is clear from the provision of the bonds themselves.

There are two provisions in each bond so limiting the liability.

In section 1 it is provided:

"* * * The underwriter, in consideration of an annual premium, agrees to indemnify First National Bank, Ardmore, Okla., hereinafter called the Insured, against the direct loss, sustained while this bond is in force and discovered as hereinafter provided, of any money or securities, or both, as defined in section 5 hereof."

Section 2 thereof provides:

"This bond covers losses which shall be sustained after noon, Standard time at the Insured's main office, of the date hereof and prior to noon, Standard time as aforesaid, of the effective date of the cancellation of this bond as provided in section 14 hereof, and which, in case of losses caused by any employee or employees as to whom this bond, prior to such cancellation shall have terminated as provided in section 15 hereof, shall be discovered before the expiration of one year from such termination, and in case of all other losses, before the expiration of one year from the date of cancellation."

Each bond with the rider attached thereto must be treated as a single contract made up of the base provisions of the bond and the rider and not separate agreements.

It is clear that the main purpose of the rider was to modify the base provisions of the bond so as to make the surety not liable unless the total loss of the bank suffered, as stated in the bond and rider, exceeded $25,000, and then only to the extent of such excess. For this concession the premium for the bond was reduced. That is, plaintiff was required to pay less for the bond as modified by the rider. Thereunder, before the surety could become liable for the full amount of the bond, the loss or losses of the bank must have amounted to $75,000. This would have been true even though the bank did not carry the so-called bond of the United States Fidelity & Guaranty Company. It could have canceled that bond without in any degree affecting the liability of the surety.

The question is: What "loss or series of losses" are meant when such terms are used in the riders?

Naturally we turn to the loss or series of losses insured against by the base provisions of the bond.

First they are "direct loss sustained while this bond is in effect, and discovered as hereinafter provided," and "losses which shall be sustained after noon standard time at insured's office of the date hereof, and prior to noon, standard time as aforesaid, of the effective date of the cancellation of this bond."

There is nothing whatever in the riders to indicate an intention to include any other loss or losses whatever, whether sustained before or after the time covered by the bonds.

By the riders it is provided that in consideration of a reduced premium the surety should not become liable under the bond, "unless the amount of such loss or series of losses * * * shall exceed twenty-five thousand dollars, and then for such excess only."

It is argued that because there were no words used in the "unless" clause specifically limiting the words "series of losses" therein used to losses sustained within the terms of the bond, any losses within a series extending back years before the date of the bonds must be included in making up the $25,000 exemption.

The weakness of this contention may be demonstrated by supposing Thomas had, by a series of acts, beginning and ending before the effective date of either bond here involved, stolen the funds of the bank, and had taken none whatever during the terms of the bonds sued upon, could it be contended that defendants' bonds covered such a "series of losses"? Certainly not, for such a holding would in effect have nullified the plain provisions of the riders, and would have made the sureties liable for losses which they did not insure against.

By the plain terms of the bonds and the riders, construed together, only losses sustained within the terms of the respective bonds were to be taken into consideration in making up the first $25,000 loss or losses, for which the sureties were not to become liable.

Both parties cite Minneapolis Nat. Bk. v. Fidelity & Cas. Co. of N. Y., 293 Fed. 47.

The trial court in this case took the view that because the rider under consideration in the Minneapolis Nat. Bk. Case, supra, provided in effect that the insured should have and maintain a primary bond in the amount of $25,000 during the time the bond sued upon should remain in effect, constituted a limitation of time as to the deductible losses in making up the first $25,000 to losses sustained within the terms of the bond sued upon, for which the surety was not to become liable. No primary bond was mentioned in the riders here under consideration. But it is clear that the

bank itself was to be responsible for the first $25,000 in losses, so far as the sureties in the bonds sued upon were concerned, and it matters not whether the bank had secured itself against such losses by another bond.

The rider in the case above referred to contained a clause:

"And for the purpose of this excess bond, the insured shall be considered to be carrying such primary bond, whether actually carried or not, and, if carried, whether valid and enforceable or not."

It was this clause that the court held:

"* * * put beyond the possibility of misunderstanding the meaning of the general language of the endorsement, and in the face of that language it is idle to discuss an interpretation that would make it possible to charge against the primary bond losses sustained prior to October 24, 1922, whether discovered or not · prior to that date, sufficient in amount to exhaust the bond, and so that from October 24th onward there would be no underlying bond. Such a construction would convert the excess bond, based upon a reduced premium, into a primary bond, and would produce a result never contemplated by the contracting parties."

The construction contended for by plaintiff herein would render the sureties liable for all losses up to $50,000 sustained after the effective date of the bonds, in case there had already been sustained at the effective date of the bond an undiscovered loss amounting to $25,000. In such case the bank would have had the benefit of the reduced premium without any corresponding advantage to the surety. Such was not the apparent purpose and intent of the parties.

In First Nat. Bk. of Amarillo v. Continental Cas. Co., 71 Fed. (2d) 838, involving the construction of a bond and rider, which by the terms of a rider attached thereto covered losses under a prior bond which had been canceled, discovered after the expiration of the time limited therein for the discovery of loss thereon, provided that such loss or losses would have been recoverable under the prior bond had it not been canceled.

In the opinion it is said:

"The excess bond assumed liability for losses above $50,000 incurred either before or after its effective date; but it did not contemplate or authorize the adding together or combining of losses incurred both before and after that date. To take future losses and add them to past losses and thus make up an amount sufficient to create a

liability under the excess bond would be not to construe the contract by which the casualty company agreed to be bound, but to make one under which the bank could recover."

Here the sureties assumed liability for losses sustained during the terms of the bonds.

We conclude that by the terms of each bond, with the rider attached, construed as one contract, losses occurring prior to the effective date of the bond sued upon could not be added to losses occurring thereafter to make up an amount sufficient to create a liability under the excess bonds.

The judgments are reversed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, WELCH, PHELPS, and CORN, JJ., concur. GIBSON, J., not participating. BAYLESS, J., absent.